SLIP OPINION



# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV–15–905

| | |
|---|---|
| KAREN JONES<br>APPELLANT | **Opinion Delivered** April 27, 2016 |
| V. | APPEAL FROM THE ARKANSAS<br>WORKERS' COMPENSATION<br>COMMISSION |
| NORTH ARKANSAS REGIONAL<br>MEDICAL CENTER | [NO. G201877] |
| APPELLEE | AFFIRMED |

## CLIFF HOOFMAN, Judge

Appellant Karen Jones appeals from a September 11, 2015 opinion by the Arkansas Workers' Compensation Commission ("Commission") affirming and adopting the findings of fact and conclusions of law made by the Administrative Law Judge ("ALJ") in favor of appellee North Arkansas Regional Medical Center ("NARMC"). On appeal, appellant contends that the Commission erred in denying her requested MRI treatment as reasonably necessary in connection with her compensable leg injury. We affirm.

It is undisputed that appellant sustained a compensable work injury to her left leg on February 27, 2012, after she fell from a stepladder while changing the curtains in an isolation room at NARMC. After her fall, Jones was diagnosed with a left proximal tibia fracture, and Dr. Tarik Sidani performed surgery on February 28, 2012, and on March 13, 2012. Subsequently, Jones received physical therapy, and on September 26, 2012, Dr. Sidani placed Jones at maximum medical improvement with a final impairment rating of eight percent to

SLIP OPINION

the lower extremity.  He also noted that Jones had no permanent restrictions and recommended that Jones return to full activities at work and in daily life.

The medical evidence reflects that Jones was later evaluated by Dr. Terry Sites on March 12, 2013.  Dr. Sites noted that Jones had complained of pain in her leg from her knee to her lower leg and foot and of numbness and tingling over the lateral side of her foot.  Dr. Sites recommended that she see Dr. Michael Morse to evaluate whether there was anything that he could do "to help with her neuropathic leg pain."  On January 28, 2014, Dr. Sites recommended that she refrain from squatting, climbing, or sitting or standing for more than four hours at a time.

On July 15, 2014, Dr. Sites noted that the electromyography/nerve conduction velocity ("EMG/NCV") study performed by Dr. Morse did not reveal any specific nerve injury in the left lower extremity and that the MRI requested by Dr. Morse had been denied. Jones had complained that she was experiencing pain that radiated from her knee to her ankle. Therefore, after subsequent visits and a cortisone injection, Dr. Sites noted in the patient notes that he had discussed the possibility of other treatment options for her leg, including arthroscopy.  Regarding the MRI that Dr. Morse recommended, Dr. Sites stated the following in the patient notes:

> Karen returns to the clinic today noting her left knee feels better after the 10-07-14 cortisone injection.  She had great relief for three weeks with some return since.  She has been seen by Dr. Morse in Fayetteville, who ordered an MRI of what sounds like her lumbar spine, currently denied by Worker's Compensation.  In my opinion, this is a critical component of diagnostic testing to help determine the source or sources of her pain.  She had numbness and tingling in her left lower extremity from the hip area down to and past the knee, numbness on the bottom of her foot.  She has pain in that distribution, as well as pain at the knee. . . . She notes she has a court date

upcoming as it relates to getting her MRI.

Dr. Morse initially saw Jones on May 7, 2013. His notes reflect that Jones complained of constant throbbing pain and that she was having difficulty sleeping at night. He additionally noted that she had indicated that she had "minimal back pain and has a history of 'degenerative discs in my back' dating back to 2000 when an x-ray was taken apparently showing disc space narrowing." After his physical examination, he noted that Jones had an absent left-ankle jerk, "which takes this outside the distribution of the peroneal nerve and puts it more in the S1 distribution which would imply either a sciatic neuropathy or a S1 radiculopathy." Therefore, he noted that he intended to conduct an EMG/NCV study, and "[d]epending on what that shows, she may need a MRI of the lumbar spine."

On May 14, 2013, Dr. Morse wrote that he conducted an EMG/NCV study in the left lower extremity and that he did not find any active or chronic denervation or any delay across the fibular head when the peroneal nerve is stimulated. Therefore, he excluded entrapment neuropathy and stated,

> She does have some sensory loss and absent left ankle jerk which places this more in a S1 distribution. I would like to do a MRI of the lumbar spine to make sure there is no lumbar radiculopathy.
>
> I also put her on gabapentin for pain. She is on 300 mg tid without side effects. It is too early to tell if it is going to work.

In a form provided by Jones's counsel dated August 14, 2014, Dr. Morse checked "Yes" to the statement that it was his opinion that the injury that Jones had to her lower back was related to her work-related injury when she fell off a stepladder.

NARMC has continually disputed that Jones sustained a compensable back injury as

SLIP OPINION

a result of her fall or that she is entitled to additional medical treatment in the form of a lumbar MRI. In a letter dated December 1, 2014, to the ALJ, Jones's counsel wrote,

> At the pretrial the issues listed are:
>
> 1. Continued medical treatment as prescribed by Dr. Michael Morse;
> 2. Whether the claimant sustained a compensable injury to her lower back on February 27, 2012.
>
> At this time, we would respectfully request to reserve the issue of compensability on the lower back.
>
> At issue in the hearing is the medical as recommended by Dr. Michael Morse in the form of an MRI on her back. The doctor has testified in his deposition, whose testimony is going to be introduced as an exhibit, that the MRI on her back he prescribed in the treatment of her leg injury. He further testified that in order to state with any certainty whether or not there was a back injury he would need the results of that MRI.
>
> We, therefore, would like to reserve the issue of the back injury pending the determination of the court on the first issue.

Therefore, although appellant initially contended that she sustained a compensable back injury as a result of her February 27, 2012 accident, she withdrew this contention prior to the hearing before the ALJ. Thus, the only issue left before the ALJ was whether Dr. Morse's recommended lumbar MRI was reasonably necessary in connection with her compensable leg injury.

A hearing on this issue was held before the ALJ on December 10, 2014. Appellant testified that she fell off of the third or fourth step of a stepladder when she was changing the curtains in the isolation room. After her fall, she testified that her pain was in her leg. She explained that she was requesting an MRI because she was still having problems with her leg having no feeling. She further explained that she was also experiencing pain in her back. She

4

admitted that she had explained in her deposition that she had been experiencing problems with her back every six months since 1999. She also admitted that when she experienced these issues, she would be unable to walk for at least a day and would have to lie down.

Linda Sites, an occupational health officer at NARMC, testified that she had been following up with appellant since her work-related injury on February 27, 2012. She explained that appellant had complained of pain and trouble only with her leg after her accident and had not mentioned any issues associated with her back since the date of her injury.

A deposition of Dr. Morse that was taken on September 18, 2014, was submitted as evidence at the hearing. In his deposition, Dr. Morse testified that he had examined Jones approximately fifteen months after her accident at work and that during her examination he had discovered that her left ankle did not jerk appropriately. He further explained that there were several different possible causes, including a back problem. He conducted an EMG/NCV study, which was normal and excluded entrapment neuropathy as a possible cause. He indicated that entrapment neuropathy would have meant that there was a pinched nerve at the site of the fracture in appellant's leg. Although appellant had told him that she had a history of degenerative disc disease in her back and that she had minimal back pain, Dr. Morse testified that appellant had failed to tell him that she would throw her back out once every six months. Instead, he explained that she had described that most of her pain was in her leg.

After Dr. Morse was questioned about his August 14, 2014 letter, he stated that he

probably should have marked that he was unable to answer the first question[1] because if she had persistent back pain, it "could imply back injury. That's such a difficult question to answer. Really the MRI was going to help me with that." After further questioning, Dr. Morse additionally explained that he wanted to perform a lumbar MRI to help him "decide if it was a back issue or not." Therefore, because he had ruled out any nerve problem in her leg by the normal EMG/NCV study, he wanted to conduct a lumbar MRI to determine if she had any "lumbar radiculopathy."

After the hearing, the ALJ filed an opinion on February 5, 2016. The opinion outlined a detailed description of the facts presented at the hearing. Additionally, the ALJ specifically found the following:

> The sole issue for determination is whether the treatment recommended by Dr. Morse, in the form of a lumbar MRI, is reasonable and necessary for the claimant's compensable left leg injury of February 27, 2012.
> . . . .
>
> Here, the evidence demonstrates that the claimant has had significant problems with her back dating back prior to her compensable leg injury. The claimant admitted that during the last fifteen years or so, she has had problems with her back that has left her bedridden for at least a day, every six months or so. There is no convincing indication from the record that the treatment (lumbar MRI) recommended by Dr. Morse is in connection with the compensable leg injury. Nor is there any medical evidence directly linking the claimant's current symptoms to her compensable left leg injury of February 27, 2012.
> Therefore, due to all of the foregoing reasons, I find that the claimant failed to prove that the requested treatment in the form of an MRI is reasonably necessary in connection with her compensable injury.

---

[1] Dr. Morse had checked "Yes" to the question asking whether it was his opinion that the injury to Jones's lower back was related to her work–related injury when she fell off the stepladder.

Subsequently, on September 11, 2015, the Commission in a 2–1 majority opinion affirmed and adopted the ALJ's opinion as its own. Under Arkansas law, the Commission is permitted to adopt the ALJ's opinion. *SSI, Inc. v. Cates*, 2009 Ark. App. 763, 350 S.W.3d 421. In so doing, the Commission makes the ALJ's findings and conclusions the findings and conclusions of the Commission. *Id*. Therefore, for purposes of our review, we consider both the ALJ's opinion and the Commission's majority opinion. *Id*.

Appellant contends that the Commission erred in denying her requested MRI treatment as reasonably necessary in connection with her compensable leg injury. In appeals involving claims for workers' compensation, the appellate court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *Prock v. Bull Shoals Boat Landing*, 2014 Ark. 93, 431 S.W.3d 858. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id*. The issue is not whether the appellate court might have reached a different result from the Commission, but whether reasonable minds could reach the result found by the Commission. *Id*. Additionally, questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Id*. When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and determine the facts. *Id*. Finally, this court will reverse the Commission's decision only if it is convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Id*.

Arkansas Code Annotated section 11-9-508(a) (Repl. 2012) requires an employer to

provide an employee with medical and surgical treatment "as may be reasonably necessary in connection with the injury received by the employee." However, a claimant bears the burden of proving entitlement to additional medical treatment. *LVL, Inc. v. Ragsdale*, 2011 Ark. App. 144, 381 S.W.3d 869. What constitutes reasonably necessary treatment is a question of fact for the Commission. *Id*. The Commission has authority to accept or reject medical opinion and to determine its medical soundness and probative force. *Id*. Furthermore, it is the Commission's duty to use its experience and expertise in translating the testimony of medical experts into findings of fact and to draw inferences when testimony is open to more than a single interpretation. *Id*.

Although it was undisputed that appellant sustained a compensable leg injury, appellant withdrew her controverted claim that she had also sustained a compensable back injury. The evidence presented indicated that appellant had a history of back issues prior to her leg injury. Additionally, Dr. Morse explained in his deposition that the EMG/NCV study had ruled out any nerve problem in Jones's leg, which would have been related to her work–related leg injury. Rather, Dr. Morse indicated that he was seeking a lumbar MRI to help him determine whether appellant's pain was related instead to a back issue, including any lumbar radiculopathy. Because appellant withdrew her contention that she had also sustained a compensable back injury as a result of her accident, the Commission's finding that appellant failed to prove by a preponderance of the evidence that she was entitled to additional medical treatment in the form of a lumbar MRI for her compensable leg injury is supported by substantial evidence. As such, we affirm.



Affirmed.

ABRAMSON and WHITEAKER, JJ., agree.

*Odom Law Firm, P.A.*, by: *Conrad T. Odom*, for appellant.

*Wright, Lindsey & Jennings LLP*, by: *John D. Davis*, for appellee.